**2018 BNH 012**        Note:   This is an unreported opinion.  Refer to LBR 1050-1 regarding citation.
_____

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW HAMPSHIRE

In re:                                                                                                       Bk. No. 18-10614-BAH
                                                                                                              Chapter 13
Michael Babineau,
        Debtor

*Kevin P. Chisholm, Esq.*                          *Jack S. White, Esq.*
*Attorney for Debtor*                                *Welts, White & Fontaine, P.C.*
                                                                *Attorney for Jill Babineau, Creditor*

## MEMORANDUM OPINION

### I.  INTRODUCTION

Currently before the Court is the debtor's Objection to Claim No. 7-1 (the "Objection") (Doc. No. 32).  The Objection arises from proof of claim 7-1 (the "Claim") filed by Jill Babineau (the "Creditor") asserting that debtor Michael Babineau (the "Debtor") owed the Creditor a total of $33,385.50 arising from a domestic support order.  In the Objection, the Debtor argues that the Claim should not be allowed as a priority domestic support obligation for two reasons: (1) the Debtor has already paid the Creditor $23,500.00 of the spousal support listed in the Claim, so that portion of the Claim should not be allowed at all; and (2) the remainder of the Claim, in the amount of $10,385.50, was a punitive award of attorney's fees which does not qualify for priority treatment, and is only allowable as a general unsecured claim.  (Doc. No. 32 at ¶¶ 4-10).  The Creditor agrees that the Debtor already paid $23,500.00 of the Claim, and amended her proof of claim on October 11, 2018, reducing it to $10,385.50 and asserting that the entirety of the reduced amount constitutes a domestic support obligation ("DSO") within the

meaning of 11 U.S.C. § 101(14A), entitled to priority and payment in full pursuant to 11 U.S.C. §§ 507(a)(1) and 1322(a)(2).  (Doc. No. 33 at ¶ 11).[1]

For the reasons set forth below, the Court finds that the entirety of the Claim is a DSO within the meaning of 11 U.S.C. § 101(14A) entitled to priority and payment in full pursuant to 11 U.S.C. §§ 507(a)(1) and 1322(a)(2).  Therefore, the Court will overrule the Debtor's Objection.

## II.  JURISDICTION

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and Local Rule 77.4(a) of the United States District Court for the District of New Hampshire.  This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## III.  FACTS

The facts are undisputed.  The Debtor and the Creditor are married and in the process of divorcing.  During the divorce proceedings a temporary hearing (the "Temporary Support Hearing") was held in the New Hampshire Circuit Court—6th Circuit—Family Division (hereinafter the "Marital Court") on April 12, 2017, where the Creditor requested temporary alimony in the amount of $1,500.00 and presented evidence that the Debtor received significant income from self-employment.  The Debtor acknowledged self-employment income in the past but denied that he was continuing to receive it.  Based on the Debtor's income representations,

---

[1] Although the Debtor did not file a separate objection to the amended proof of claim, the Court applies the grounds asserted by the Debtor in objecting to the priority of the attorney's fees component of the original claim as also being asserted against them in the amended claim, and continues to refer to the amended claim as the "Claim."

the Marital Court ordered that the Debtor pay $1,200.00 per month in alimony (the "Temporary Support Order").

On July 20, 2017, the Debtor filed a Motion for Emergency Financial Relief, and Modification of Temporary Orders, arguing that he had insufficient income to pay the $1,200.00 monthly alimony. The Creditor again argued that the Debtor had misrepresented his self-employment income. However, based on the Debtor's continuing representations that his self-employment income had ended, the Marital Court reduced his alimony obligation to $600.00 per month (the "Temporary Modification Order").

Following the Temporary Modification Order, the Creditor retained counsel to represent her. Through discovery it was established that the Debtor had not been truthful to the Marital Court or the Creditor regarding his self-employment income during the prior two alimony proceedings. The Creditor filed a Verified Motion to Modify Temporary Orders (the "Motion to Modify") and a Motion for Contempt and Request for Attorney's Fees (the "Motion for Contempt") (collectively the "Support Motions"), along with two other motions not relating to the Objection. On June 21, 2018, the Marital Court entered an Order on the Support Motions in the Creditor's favor (the "Support Modification Order"), requiring the Debtor to pay monthly alimony in the amount of $1,500.00 retroactively to the date of the Temporary Support Hearing, and awarding $10,385.50 in attorney's fees incurred by the Creditor specifically resulting from the misleading statements the Debtor made to the Court and to her counsel regarding his income.

With respect to the Motion to Modify, the Support Modification Order states in relevant part:

> The Court finds that its prior Temporary Orders of Alimony were based on the misrepresented income and earning capacity of the [Debtor]. It has since been discovered, through substantial and costly discovery efforts of [Creditor's] counsel that the [Debtor] has received significant income from a side business, in addition to his

3

primary employment that was not disclosed by [Debtor] at the time of the Temporary Hearing.

And with respect to the Motion for Contempt, the Support Modification Order states in relevant part:

> The Court finds the [Debtor] in Contempt for misrepresenting his income to [Creditor's] counsel and the Court. The Court relied upon the representations of [the Debtor] regarding his income in making its Temporary Orders and subsequent Orders which modified the Temporary Orders and did not take into account [Debtor's] substantial undisclosed income. The Court orders the [Debtor] to pay attorney' fees in the amount of $ 10,385.50 to [Creditor's] counsel to pay for the extensive and unnecessary discovery to uncover the [Debtor's] income from self-employment, including preparation of subpoenas, Motions for Appointment of Commissioner, expenses associated with taking the [Debtor's] deposition, expenses associated with taking the deposition of Ronald Senesi, the cost of having to file [Creditor's] December 15, 2017 Motion for Contempt, and review of the [Debtor's] objection to the same and the cost of [Creditor's] counsel's appearance at a hearing.

Subsequent to the hearing on the Support Motions but prior to the Marital Court issuing the Support Modification Order, the Debtor filed his chapter 13 petition. The Creditor filed her proof of claim, to which the Debtor filed the Objection (Doc No. 32). The Creditor filed a response to the Debtor's objection (Doc. No. 43) and the Debtor filed a response to her response (Doc. No. 45).[2]

**IV. DISCUSSION**

The Debtor objects to the Creditor's classification of the $10,385.50 attorney's fees award in the Order as a DSO, arguing that the attorney's fees were awarded as a punitive sanction and are therefore not "in the nature of support" or entitled to priority under 11 U.S.C. § 507(a)(1), and should instead be considered a general unsecured claim. (Doc. No. 32 at ¶¶ 8-11).

---

[2] As mentioned above, the parties have focused their arguments on the attorney's fees set forth in the original proof of claim, which are unchanged in the amended proof of claim.

4

The Creditor submits that although the award of attorney's fees was granted pursuant to a motion for sanctions, the award should be considered a DSO because the Marital Court's award of attorney's fees was made in conjunction with the award for alimony, and was so directly tied to the alimony award that the attorney's fees were also intended to "function as support." (Doc. No. 43 at ¶ 11). As such, the Creditor asserts that the Debtor's obligation to pay the attorney's fees is part of the support award and is a non-dischargeable DSO. Id.

Pursuant to 11 U.S.C. § 101(14A), a DSO includes a debt that is (1) owed to a former spouse, (2) in the nature of alimony, maintenance or support, without regard to whether such debt is expressly so designated, (3) established by a separation agreement, divorce decree or court order, and (4) not involuntarily assigned to a nongovernmental agency. A DSO is a priority claim pursuant to 11 U.S.C. § 507(a)(1). As such, the outcome of the Objection rests on whether the $10,385.50 attorney's fee award is "in the nature of support" and therefore a claim entitled to priority pursuant to 11 U.S.C. §§ 507(a)(1) and 1322(a)(2), which must be fully paid in the Debtor's plan. (Doc. No. 32 at ¶ 4).

Courts look at the totality of circumstances of a particular case in deciding whether obligation was intended to qualify as a DSO, examining a range of factors including: the language used by the state court in the document establishing the obligation, whether the property award appears to "assuage need" as discerned from the structure of the award, and the financial circumstances of the recipients at the time of the relevant agreement. Smith v. Pritchett (In re Smith), 398 B.R. 715, 721 (B.A.P. 1st Cir. 2008), aff'd, 586 F.3d 69 (1st Cir. 2009) (citing Werthen v. Werthen (In re Werthen), 329 F.3d 269, 273 (1st Cir. 2003)). While there is no exhaustive list of factors a court must consider, the classification of an ancillary obligation as a penalty or a punitive sanction does not automatically disqualify it as being in the nature of

support for purposes of 11 U.S.C. § 507(a).  Instead, courts in this circuit have found that "the classification of ancillary obligations, such as attorneys' fees, should follow the classification of the primary obligation in determining their nature for dischargeability purposes."  See In re Sinewitz, 166 B.R. 786, 788 (Bankr. D. Mass. 1994).

The "critical issue" in a case such as this is whether the state court intended the obligation or award to serve as support or as "something else."  In re Smith, 398 B.R. at 721 (citing In re Werthen, 329 F.3d at 272–73).  How the award in fact functioned does not necessarily reflect how it was intended to function, although it may be evidence of the intent of the court or the parties, all of which are critical in determining the nature of the obligation.  In re Smith, 398 B.R. at 721 (citing In re Hale, 289 B.R. 788, 791 n. 4 (B.A.P. 1st. Cir. 2003).

For example, in Smith, a debtor's separation agreement imposed a $50 per day penalty to be paid to his ex-spouse each day his alimony payments were late.  In re Smith, 398 B.R. at 717.  Although the debtor had paid his support obligations every month, the payments had frequently not been timely, triggering the $50.00 per day penalty, which the debtor never paid.  After several contempt orders were issued relating to the debtor's failure to pay the penalty, the state court entered a judgment against the debtor for over $75,000.00 consisting solely of the accrued penalties, interest and costs (the "Judgment").  Id. at 718-19.

The debtor subsequently filed a chapter 13 petition.  The ex-spouse/creditor filed a proof of claim for the amount of the Judgment, asserting it was entitled to priority under 11 U.S.C. § 507(a)(1)(A) as arising from the separation agreement.  The debtor objected to the DSO priority status of her claim, arguing that the per diem penalties were solely punitive in nature, and were

6

not in nature of support.[3]  Id. at 719-20.  The bankruptcy court overruled the claim objection, finding that the claim constituted a DSO.  The debtor appealed to the Bankruptcy Appellate Panel (the "BAP").  Id. at 720.

The BAP reversed the bankruptcy court.  In so doing, the Panel discussed the difference between obligations that are "in the nature of support" and those that are not.  The Panel found that two types of awards are generally in the nature of support even if they were not labeled as such by the state court: obligations resulting from a failure to make alimony payments, and property awards intended to function as support.  Id. (citing In re Werthen, 329 F.3d at 274; Macy v. Macy, 114 F.3d 1, 2 (1st Cir. 1997)).  The most important feature of these types of obligations is that they are considered compensatory because they serve only "to make the recipient spouse whole where costs have been incurred in enforcing the alimony obligation, namely the cost of retaining services and the cost of the lost use of the funds."  In re Smith, 398 B.R. at 722.

The Panel, after considering the language of the support order and Judgment, found that the penalties were not in the nature of support not because they were classified as a penalty, but because they were so unreasonably high in relation to the amount of support awarded.  The penalties could "not reasonably [have been] intended to function as compensation to [creditor/spouse] for lost use of funds in the event payment was late," and instead were intended to penalize the debtor for failing to make timely payments.  Id. at 722-23.  As such, even though the penalties arose from a document containing the terms of the support obligation, the Panel held they were not in the nature of support, and instead were a general unsecured claim.  Id.

---

[3] The claim was also filed as a secured claim, and the debtor also filed a motion to avoid the lien securing the Judgment, arguing that it impaired her homestead exemption.  On appeal, the debtor conceded that the outcome of both his motion and his claim objection turned on whether the underlying claim was a DSO.

7

Here, unlike in Smith, it is clear from the language of the Support Modification Order that the reason for the granting of the award of attorney's fees was to reimburse the Creditor for the fees she spent proving that the Debtor was misrepresenting his income to avoid paying her additional alimony. The direct result of the Creditor's attorney's efforts was the increase of the support award, reflecting the Debtor's actual income, which he had misrepresented to the Marital Court on several previous occasions. The Support Modification Order states multiple times that that the Debtor misrepresented his income to the Marital Court and Creditor's counsel, that the Creditor had to hire and pay counsel to prove that the Debtor was not being truthful about his income, and that as a result of her counsel's actions her support was substantially increased from $600.00 per month to $1,500.00 per month.

While the motion under which the attorney's fees were awarded was presented as a motion for contempt, this Court is not bound by titles and classifications of obligations in the pleadings, and instead looks at the intent of the order awarding attorney's fees and how the award was intended to function. Although the Order does not specifically state the attorney's fee award is spousal support, the Order granted the exact amount of attorney's fees spent by the Creditor to modify the support award, which clearly indicates that the intent of the attorney's fee award was to function as compensation for the Creditor's loss of use of funds while attempting to modify the spousal support award due to the Debtor's misleading actions, and to ultimately obtain the amount of support to which she would originally have been entitled but for the Debtor's misrepresentations. That is sufficient evidence under these circumstances.

8

## V. CONCLUSION

For the reasons set forth herein, the Court finds that the Claim is a DSO within the meaning of 11 U.S.C. § 101(14A) and is entitled to priority and payment in full pursuant to 11 U.S.C. §§ 507(a)(1) and 1322(a)(2).  The Objection is overruled.  This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  The Court will issue a separate order consistent with this opinion.

ENTERED at Concord, New Hampshire.


Date:  December 18, 2018                    /s/ Bruce A. Harwood
                                            Bruce A. Harwood
                                            Chief Bankruptcy Judge